1    FELIX T. WOO (SBN 208107)
     fwoo@ftwlawgroup.com
2    FTW LAW GROUP
     601 South Figueroa Street, Suite 1950
3    Los Angeles, California 90017
     Telephone:   (213) 335-3960
4    Facsimile:   (213) 344-4498

5    Attorney for Plaintiffs
     DAVID M. COHEN and SONDRA GOTTSCHALK-COHEN
6

7

8              UNITED STATES DISTRICT COURT

9        FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11   DAVID M. COHEN, an individual, and       Case No. 2:20-cv-11457
     SONDRA GOTTSCHALK-COHEN, an
12   individual,                              COMPLAINT FOR DAMAGES

13                  Plaintiffs,               JURY DEMAND

14          vs.

15   TIAA-CREF INDIVIDUAL AND
     INSTITUTIONAL SERVICES, LLC, a
16   Delaware limited liability company,
     TEACHERS INSURANCE AND
17   ANNUITY ASSOCIATION OF
     AMERICA, a New York corporation,
18   and COLLEGE RETIREMENT
     EQUITIES FUND, a New York
19   corporation,

20                  Defendants.

21

22

23

24

25

26

27

28

─────────────────────────────────────────
                      COMPLAINT

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA  90017
(213) 335-3960

1    Plaintiffs David M. Cohen and Sondra Gottschalk-Cohen ("Plaintiffs") state

2   for their Complaint as to defendants TIAA-CREF Individual and Institutional

3   Services, LLC, Teachers Insurance and Annuity Association of America, and

4   College Retirement Equities Fund (collectively referred to herein as "TIAA") as

5   follows:

6                                   **PARTIES**

7        1.    Plaintiff David M. Cohen is an individual who resides in Orange

8   County, California.

9        2.    Plaintiff Sondra Gottschalk-Cohen is an individual who resides in

10  Orange County, California.

11       3.    Defendant TIAA-CREF Individual and Institutional Services, LLC is a

12  Delaware limited liability company with its principal place of business in New

13  York, New York.

14       4.    Defendant Teachers Insurance and Annuity Association of America is

15  a New York corporation with its principal place of business in New York, New

16  York.

17       5.    Defendant College Retirement Equities Fund is a New York

18  corporation with its principal place of business in New York, New York.

19                          **JURISDICTION AND VENUE**

20       6.    Jurisdiction is proper here under 28 U.S.C. section 1332 as between

21  Plaintiffs and defendants because there is complete diversity between them.

22  Plaintiffs are residents of this state, and the defendants' principal places of business

23  and headquarters are in New York state.  Plaintiffs also allege damages greater than

24  the jurisdictional minimum amount in controversy of $75,000.

25       7.    Venue is proper under 28 U.S.C. section 1391(b) because Plaintiffs

26  live in this judicial district.

27

28

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA  90017
(213) 335-3960

- 1 -

COMPLAINT

1

**FACTS**

2       8.      Plaintiffs are elderly retirees with substantial holdings with TIAA

3   through contracts they entered with Teachers Insurance and Annuity Association of

4   America and College Retirement Equities Fund.

5       9.      In 2011, Plaintiffs agreed to Traditional IRA accounts with TIAA,

6   each with a feature called the minimum distribution option.  Due to changes in

7   TIAA's internal account management and branding over the years, Plaintiffs were

8   each issued a TIAA account number, and a companion CREF account number for

9   their annuities.  Plaintiffs' annuity contracts as held in these Traditional IRA

10  accounts are referred to herein as the "Traditional IRA accounts."  Plaintiffs are

11  informed and believe that their account numbers are tied to their names, and TIAA

12  can ascertain these numbers through their internal systems, and as a result,

13  Plaintiffs will not reveal those privately held account numbers in this public filing.

14      10.     These Traditional IRA accounts each hold an annuity contract product

15  issued by TIAA and CREF with a minimum guaranteed annual return of 3%.  This

16  3% minimum guarantee rate was a material inducement for Plaintiffs to choose

17  these annuity accounts for their investments.

18      11.     Moreover, TIAA provided an endorsement to Plaintiffs' annuity

19  contracts that allowed for money in the Traditional IRA accounts to be transferred

20  to other TIAA accounts (as enumerated in the annuity contracts), and upon

21  transferring any such monies back from one of those other permitted accounts to the

22  Traditional IRA account, Plaintiffs would still be entitled to the 3% minimum

23  return on the sum transferred back to the Traditional IRA account (this right is

24  referred to herein as the 3% MDO Right).

25      12.     Plaintiff's decision in 2011 to take advantage of the 3% minimum

26  guaranteed rate in these Traditional IRA accounts was further validated as

27  prevailing rates of return dropped over the ensuing years, while Plaintiffs continued

28  to benefit from the 3% minimum guaranteed rate.

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

COMPLAINT

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

13. By March 2020, the sums in these accounts were approximately $375,000 for Mr. Cohen and $619,000 for Ms. Gottschalk-Cohen.

14. As evidenced by their investment choices and holdings, Plaintiffs' long-term investment preferences were to hold the majority of their long-term investment assets comprised on cash, cash equivalents, or guaranteed return assets for most of their investment period.

15. While principally focused on low-risk investments, from time to time, Plaintiffs have observed and anticipated changes to the financial markets and sought to invest accordingly.

16. Thus, on or about March 13, 2020, Mr. Cohen and his wife visited the TIAA office in Newport Beach and met with a wealth management advisor assigned to their accounts. At the meeting, Mr. Cohen discussed his interest to rebalance his investment portfolio, and transfer a substantial amount of his and his wife's money from their Traditional IRA account with the 3% MDO Right to one of the other TIAA accounts permitted under their contracts. At the time, given Mr. Cohen anticipated a significant market correction based on published reports of well-known analysts and market experts, which he shared with his TIAA adviser, and was interested in transferring his and his wife's funds to either a TIAA Equity Index or TIAA Growth account, which are the domestic equity accounts allowed under Plaintiffs' contracts.

17. Before doing so, however, Mr. Cohen wanted to confirm his understanding that his and his wife's Traditional IRA accounts retained the 3% MDO Right – that is, the contracts allowed them to move the money out of those accounts, and assuming positive gains to those monies in either an Equity Index or Growth account, that when he and his wife moved that money back to their Traditional IRA accounts, the 3% MDO Right would still apply to the sums that were returned to the Traditional IRA accounts.

COMPLAINT

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

1    18.    Unfortunately, the advisor who met with Mr. Cohen claimed not to be

2    familiar with the 3% MDO Right, and indicated that she did not think Plaintiffs

3    would retain the 3% minimum on the sums transferred out of those accounts if

4    those monies (and any gains) were later transferred back again.

5    19.    Over a week later, on March 23, 2020, Mr. Cohen contacted TIAA by

6    telephone with the intent to transfer $200,000 from each of his and his wife's

7    Traditional IRA accounts to a TIAA variable account.  When Mr. Cohen sought

8    assurances that TIAA would honor the 3% MDO Right when the money (and any

9    gains) was transferred back to the Traditional IRA accounts, however, TIAA's

10   representative told him that TIAA's online records and account information did not

11   show any such 3% MDO Right, and that if he and his wife moved funds out of the

12   Traditional IRA accounts, they would no longer be eligible to receive the 3%

13   minimum guaranteed rate on any funds returned to original accounts.  Instead, such

14   funds would only receive the prevailing rate at the time (which, in March 2020 was

15   substantially lower than 3%).

16   20.    TIAA's representative's denial of a material contractual term in Mr.

17   Cohen and his wife's Traditional IRA accounts and related annuity contracts led

18   Mr. Cohen to ask for a supervisor.

19   21.    Mr. Cohen's discussions with the supervisor did not fare much better.

20   On the call, Mr. Cohen noted that he had previously received a letter from TIAA in

21   August of 2015 confirming the right to move funds out of the Traditional IRA

22   accounts and into specific TIAA or CREF accounts to retain the 3% MDO Right

23   upon returning such funds (plus any gains) to the Traditional IRA account.  Neither

24   the original representative nor the supervisor could locate this August 2015 letter in

25   Mr. Cohen's file, and Mr. Cohen had to email the letter to the supervisor to make

26   his point.

27   22.    Mr. Cohen was concerned that none of the TIAA representatives with

28   whom he spoke were familiar with or even knew about contracts with the 3% MDO

1    Right, and was told that this issue never came up in their training (to explain why

2    they were unable to address his questions about this contractual right). Mr. Cohen

3    was stunned that a material aspect of his contract was omitted from his and his

4    wife's file in TIAA's records, which had led to a denial of their contractual rights,

5    and asked that his and his wife's accounts be updated to reflect this right.

6        23.    The supervisor indicated to Mr. Cohen that the letter appeared to

7    confirm Mr. Cohen's understanding, and represented that changes would be

8    updated to Mr. Cohen and his wife's accounts to indicate this contract right.

9        24.    Mr. Cohen was perturbed by TIAA's handling of this matter, and as a

10   direct result of TIAA's conduct, Mr. Cohen forbeared from instructing TIAA to

11   make the transfers that Mr. Cohen had originally called about. Importantly, Mr.

12   Cohen did not want to lose out on the 3% MDO Right for his and his wife's long-

13   term investment goals.

14       25.    TIAA's denials of his and his wife's contractual rights put Plaintiffs in

15   an unreasonable bind, as he had to decide whether to pursue the gains from

16   investment in other TIAA/CREF accounts that he anticipated would be obtained by

17   transferring his and his wife's monies out of their Traditional IRA accounts versus

18   the longer-term benefits of the 3% minimum guarantee from those accounts.

19       26.    Days later, on March 26, 2020, Mr. Cohen called again to verify

20   whether his and his wife's account had been updated with the 3% MDO Right.

21   Again, he was told that his account did not have the 3% MDO Right if monies were

22   transferred out of the account and later moved back in. These denials of Mr.

23   Cohen and his wife's contractual rights persisted on March 27, March 31, and again

24   on April 8, 2020 over multiple calls and with several other TIAA representatives.

25       27.    The worst part of Mr. Cohen's dealings with TIAA is that at points,

26   such as on the call with the supervisor on March 23 and again on April 8, after the

27   TIAA supervisor spent time reviewing the contract and speaking to others, they

28   confirmed their understanding to Mr. Cohen that he and his wife appeared to have

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

-5-

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

1  the 3% MDO Right if they moved money out and back into the Traditional IRA

2  accounts.  But, in each instance, days later another TIAA representative would deny

3  Mr. Cohen and his wife that same right, and claim no such notation was made in the

4  accounts to reflect such a right.   This was the case even after these TIAA

5  representatives spent time on the phone with Mr. Cohen, and had reviewed his and

6  his wife's contract, files, specific letters indicating that Plaintiffs had such rights,

7  and TIAA's policies.

8       28.    By early May 2020, the stock market correction and recovery that Mr.

9  Cohen had anticipated had largely taken place, depriving Mr. Cohen of the benefits

10 he sought when he originally intended to transfer the monies out of his and his

11 wife's Traditional IRA accounts.

12      29.    Given that TIAA's inconsistent denials and providing him with false

13 information about his and his wife's contractual rights had caused Mr. Cohen not to

14 transfer his monies into these other accounts that would have generated substantial

15 gains as Mr. Cohen had predicted, Mr. Cohen engaged counsel to assist him in

16 addressing the material harm TIAA had caused.

17      30.    Mr. Cohen and his wife's counsel contacted TIAA and in May 2020, a

18 TIAA representative wrote back and admitted to Mr. Cohen that TIAA's

19 representatives had given him false information about his contractual rights and had

20 failed to remedy the issue even after Mr. Cohen had called repeatedly to address the

21 mistakes.  However, while TIAA admitted that its representatives had misled Mr.

22 Cohen, TIAA tried to excuse its behavior by pointing out that Mr. Cohen had

23 shown some old letters to some of their representatives in which TIAA had

24 previously informed Mr. Cohen that his and his wife's contracts had the 3% MDO

25 Right that he had asked about.

26      31.    TIAA's attempt to shift the blame for this fiasco on to its clients was

27 shocking.  TIAA's suggestion that its clients (with a million dollars invested with

28 the company) should have disregarded the company's policy decisions as to those

-6-
COMPLAINT

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

1 client's contractual rights and instead forged ahead with making impactful financial

2 decisions based on false and inconsistent information was unreasonable, and

3 evidenced a cavalier attitude about its relationship with both its clients and its own

4 contractual and fiduciary duties.

5       32.     TIAA's denials of Plaintiffs' contractual rights caused them to forbear

6 from acting on their intentions to move their money into other TIAA accounts

7 permitted under their contracts.  TIAA's misrepresentations and conduct was not

8 cured or excused by letters it sent years ago, given TIAA's own representatives

9 disclaimed whatever confirmations were contained in those letters.  If anything,

10 TIAA's misinformation was exacerbated by the letters, since Plaintiffs were left not

11 knowing what their contractual rights were when they wanted to make important

12 financial decisions.

13       33.     TIAA's admission that its representatives had provided Mr. Cohen

14 with false information about his and his wife's account, and the months of

15 inconsistent information (which, even today, have never been corrected given that,

16 as recently as October 2020, TIAA's representatives still were claiming that Mr.

17 Cohen and his wife did not have the 3% MDO Right) was not an innocent,

18 immaterial or even one-time breach of TIAA's duties and obligations.

19       34.     TIAA is not only Mr. Cohen and his wife's counterparty to their

20 contracts, but is also their fiduciary, based on their unique position of superior

21 knowledge and control over Plaintiffs' contractual rights and their investment of

22 substantial sums with TIAA.  TIAA was entrusted and relied upon by Mr. Cohen

23 and his wife to provide timely, accurate and consistent information so that Mr.

24 Cohen and his wife could make the best financial decisions.

25       35.     As a direct and proximate result of TIAA's breaches and providing

26 Mr. Cohen and his wife with false and inconsistent information about material

27 terms in their contracts, Mr. Cohen was unreasonably forced to choose between two

28 competing rights – whether to move his and his wife's money into higher

COMPLAINT

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

1  opportunity accounts, or to keep the 3% MDO Right for such monies.  However,

2  Plaintiffs never should have been put in that bind, because they had both rights

3  under their Traditional IRA annuity contracts.  Had TIAA correctly affirmed such

4  rights when Mr. Cohen called in March 2020, Plaintiffs would have, but for TIAA's

5  misrepresentations and conduct, initially transferred $400,000 into a TIAA Growth

6  or Index account, and the remainder of their monies in the days after that to take

7  advantage of the recovering market at that specific time in late March 2020.

8      36.    For example, from March 2020 when Mr. Cohen first contacted TIAA

9  about these issues, to May 2020, when his prior counsel contacted TIAA, the TIAA

10  Growth and Equity Index accounts' unit value had appreciated more than 20%.

11  Those accounts' unit value continued to move upward after that, and because the

12  natural and expected tendency of an experienced investor is to hold shares as they

13  appreciate, it is more likely than not that Plaintiffs would have held their money in

14  those accounts through today.  (For example, the Growth account's unit value was

15  at $179 on March 23, 2020, and it is $322 this week).

16      37.    Based on either the initial $400,000 that Mr. Cohen and his wife had

17  initially intended to transfer out of their Traditional IRA accounts, or the full one

18  million dollars in Plaintiffs' Traditional IRA accounts that Plaintiffs had planned to

19  move into the other TIAA equity accounts, the losses caused by TIAA's breaches

20  and conduct are more than the $75,000 jurisdictional minimum.

21                        **FIRST CLAIM FOR RELIEF**

22                            **(Breach of Contract)**

23      38.    Plaintiffs reallege each allegation set forth above and incorporates

24  them here by this reference.

25      39.    Plaintiffs and TIAA entered into the Traditional IRA annuity contracts,

26  which granted Plaintiffs the right to a 3% minimum guaranteed rate on money

27  invested in those accounts, and the right to move the money to other allowable

28

-8-
COMPLAINT

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

1   TIAA accounts, and to return that money (plus any gains) to the Traditional IRA

2   accounts and still retain the 3% MDO Right.

3         40.    This minimum rate of return, and the flexibility to move the money to

4   and from certain other TIAA accounts, were material terms in the parties' contracts,

5   and were material to Plaintiffs' decision to enter those contracts.

6         41.    TIAA's representatives falsely informed Plaintiffs that their contracts

7   did not allow them to move money out and back in again while still retaining the

8   3% MDO Right.  These misrepresentations and repudiations about a material term

9   in the contracts were a breach of the contracts.

10        42.    As a result of these breaches, TIAA caused Plaintiffs to forbear from

11  transferring their money to other TIAA variable accounts.  TIAA's breach of

12  contract caused Plaintiffs substantial financial losses more than the jurisdictional

13  limits of this court, and in an amount that will be calculated according to proof.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

16        43.    Plaintiff realleges each allegation set forth above and incorporates

17  them here by this reference.

18        44.    Based on its unique position of superior knowledge, access to

19  information and control over Plaintiffs' funds, TIAA owed Plaintiffs fiduciary

20  duties under California law.

21        45.    As a financial institution holding a million dollars of Plaintiffs' money,

22  TIAA was duty bound to act with the utmost in good faith towards Plaintiffs, and

23  Plaintiffs rightfully and reasonably reposed confidence in TIAA to manage their

24  money.  Indeed, California law acknowledges that investment advisors owe such

25  duties to their clients.

26        46.    TIAA's conduct, as alleged above, constitutes a breach of its fiduciary

27  duties to Plaintiffs.

28

-9-

COMPLAINT

47.    TIAA's breach of its fiduciary duties caused Plaintiffs substantial financial losses more than the jurisdictional limits of this court, and in an amount that will be calculated according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    For damages according to proof in excess of the jurisdictional limits of this court;

2.    For pre-judgment interest according to proof;

3.    For attorneys' fees and costs of suit as permitted by law and according to proof; and

4.    For such other and further relief as the Court deems just and proper.

Dated: December 16, 2020                    FTW LAW GROUP

By: _____
FELIX T. WOO
Attorney for Plaintiffs

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

-10-
COMPLAINT

1

## **JURY DEMAND**

WHEREFORE, Plaintiffs request a trial by jury.


Dated: December 16, 2020                    FTW LAW GROUP


By: _____
         FELIX T. WOO
         Attorney for Plaintiffs

FTW LAW GROUP
601 SOUTH FIGUEROA STREET, SUITE 1950
LOS ANGELES, CALIFORNIA 90017
(213) 335-3960

-11-

COMPLAINT